1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - -    X

UNITED STATES OF AMERICA,  :    CR 93-085

                           :

     -against-             :
                                United States Courthouse
                                Brooklyn, New York
PASQUALE CONTE,            :

                                August 11, 1994
          Defendant.       :    11:00 o'clock a.m.

- - - - - - - - - - - -    X

              TRANSCRIPT OF CONFERENCE
           BEFORE THE HONORABLE I. LEO GLASSER
              UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:           ZACHARY W. CARTER
                              United States Attorney
                              BY:  ANDREW WEISSMANN
                              Assistant United States Attorney
                              225 Cadman Plaza East
                              Brooklyn, New York


For the Defendant:            LARRY BRONSON, ESQ.


Court Reporter:               Gene Rudolph
                              225 Cadman Plaza East
                              Brooklyn, New York
                              (718) 613-2538


Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.
```

2

1  THE CLERK:  This is an application to modify bail,
2  USA against Pasquale Conte.
3  MR. BRONSON:  Good morning.
4  THE COURT:  Good morning.
5  MR. BRONSON:  Your Honor, we have filed an affidavit
6  in support of our motion with respect to this application.
7  This morning we were served with a short letter by the
8  government which we do not contend prejudices us with respect
9  to the timing of the receipt of that letter.
10  However, there are some facts which are inaccurate
11  in that letter with respect to Mr. Weissmann's representations
12  to the Court.  He says in that letter that Mr. Conte's
13  daughter came -- from information provided by Conte's
14  relatives in February, 1993, when he was arraigned, can travel
15  to New York.
16  As a matter of fact, she did not travel to New York
17  in 1993 for the purpose of his arraignment in connection with
18  this case.  At the present time, she is living in Florida.
19  Previously, when he was first arrested in this case, she was
20  living in New York, in Westchester County, and subsequently
21  moved to Florida.
22  This is a woman who suffers from cerebral palsy,
23  whose mental facilities are impaired, who in -- outside of the
24  houses is confined to a wheelchair.  In the house, she is able
25  to walk around, ambulate with the use of a walker.  She has to

3

1  have somebody with her at all times, under constant care.
2          I think the Court -- I'm sure the Court is aware of
3  the following facts with respect to this case.
4          Mr. Conte was permitted on two occasions by this
5  Court, this Court exercised its discretion in favor of
6  Mr. Conte so he could be permitted to travel to Florida for
7  the purpose of spending time with this relative.
8          At no time, Judge, has Mr. Conte been accused by the
9  government of seeing, associating, talking to any organized
10 crime figures in violation of any of the Court's conditions
11 with respect to bail.  Not only when he was in Florida, but
12 during the course of his many frequent forays outside of the
13 house, which the Court permitted for the numerous doctors
14 visits which he has been permitted by Pretrial intervention
15 and by Your Honor to take care of.
16         Mr. Conte is going to go to jail sometime in
17 September for what I would consider to be the last part of his
18 life.  He will spend approximately six years in custody.  This
19 woman is not able to see him.  She is not able to travel to an
20 institution, wherever it may be, because of her physical
21 difficulties.
22         When Mr. Conte was permitted by this Court to go to
23 Florida, it was without electronic monitoring because we tried
24 to work that out.  The people in Florida, in South Florida,
25 would not go along with that because of the difficulties in

4

1  it.
2          We worked out a system where Mr. Conte telephoned
3  and was at specified places, at specified times, in accordance
4  with the requests from Pretrial intervention.
5          On not one occasion since his arrest has Mr. Conte
6  not been where he is supposed to have been.  He's not been out
7  floating around, meeting with people, dealing with people,
8  other than where he is supposed to be.
9          If he is supposed to be at a doctor's office at 1:00
10 o'clock, he is there and he returns right home.
11         There has been no occasion where the FBI came into
12 this Court after they followed him and said Conte did go to
13 the doctor and 15 minutes after he went to the doctor left and
14 we saw him at a restaurant or a diner meeting with three
15 people who he should not be meeting with.
16         Your Honor, Mr. Conte would like this Court to know
17 and understand that the purpose of this visit is for nothing
18 other than lawful purposes, to visit with his daughter before
19 he goes into jail to spend a great part of his seventh decade
20 in the federal criminal system.  Mr. Conte will not violate
21 any conditions that you set with respect to this bail.
22         The reason the Court -- one of the reasons that the
23 Court held Mr. Conte in pretrial detention because -- was
24 because of the narcotics.  The narcotics charges were dropped
25 as a result of the plea bargain.

1         He is now -- he is now facing a lesser sentence than
2   Mr. Graziano.  Mr. Graziano's plea bargain was for ten years.
3   Mr. Conte's sentence was for seven and a half years.
4         Mr. Graziano has been permitted to go to Florida and
5   is in Florida pursuant to the government's permission.
6         Your Honor, I think that this is -- you know,
7   Mr. Weissmann has his reasons and I suggest to you that in
8   this case, although in other cases he has been more than fair,
9   in this case they are arbitrary and, I might say, with all
10  fairness to him, that we have been inundating the courts,
11  Mr. Weissmann, Pretrial Services, with letters for medical
12  care and for dental care and so forth.
13        That may seem in the usual case unusual.  However,
14  Mr. Conte is going to be 70 years old.  He's not in good
15  health.  He wants to get himself in shape so he can go to
16  prison and get -- be in good shape so he can serve the prison
17  sentence and not be in a prison facility and that's why he has
18  been going to these doctors and so forth.
19        There has never been an occasion where the
20  government said he doesn't need the treatment.  You know,
21  a -- he was in a car accident.  He goes for physical therapy.
22  His wife needs to be taken to the doctor; he takes her to the
23  doctor.  Always within the confines of the restrictions of
24  pretrial intervention.
25        I'll give you a personal example.  He got permission

1  to come to my office.  We're in the middle of a meeting in my
2  office yesterday to discuss this matter.  He says listen, I
3  can't stay anymore.  What's the problem?  Well, I have to be
4  home.  I have to leave now to be home.  I can't talk to you
5  anymore.  And he gets up and he walks out.
6          I mean, this is a man that is following your
7  instructions, Judge.  He will call Pretrial, tell them where
8  he is going to be, what he's doing.
9          I ask you as a matter of compassion to permit him to
10 visit with his daughter as he did on two occasions and he
11 didn't violate your trust on those two occasions.  He didn't
12 do anything which he wasn't supposed to.  He didn't meet with
13 anybody, and this is a legitimate request, Your Honor.  I ask
14 that it be granted.
15         With respect to the second application, Mr. Mauro,
16 although it has been detailed in an affidavit by Mr. Gleeson,
17 is alleged to be a crew member of Mr. Conte's organized crime
18 crew.
19         There is nothing in here which I -- which I see that
20 establishes Mr. Mauro's membership in or affiliation with
21 organized crime other than his relationship to Mr. Conte.  On
22 the contrary, Mr. Mauro is married to Mr. Conte's daughter.
23 Strike that.  His daughter is married to Mr. Conte's son.
24         We don't want Mr. Conte to be able to go to meetings
25 with Mr. Mauro.

7

1  The purpose of this application is, there was a
2  young baby born last week, which Your Honor gave permission
3  for Mr. Conte to go to the hospital. In an effort that he not
4  violate his bail restrictions, he wanted to go to the
5  hospital. He got permission. He didn't want to take the
6  chance to violate Your Honor's restrictions and see Mr. Mauro
7  in the hospital and have it said by a government agent that he
8  was violating your conditions.
9  There is going to be a christening shortly.
10 Mr. Conte would like the opportunity to attend the christening
11 before he goes away with Mr. Mauro, the other grandfather.
12 That's what this is about, Judge.
13 THE COURT: Mr. Weissmann?
14 MR. WEISSMANN: Judge, I'd just like to briefly
15 respond to some of the arguments made by counsel.
16 Many of the arguments regarding Mr. Conte's abiding
17 by conditions assumes a perfect world where Pretrial Service
18 and the FBI and other law enforcement can have a perfect
19 insight into what Mr. Conte is doing every single minute.
20 That simply just isn't the case, and so to say that he has not
21 been -- the government hasn't come forward and said to the
22 Court yes, we know that he has violated on these instances is
23 not -- not all that meaningful.
24 Yes, it is important, that we have not come in and
25 said previously that he's violated, but it doesn't mean by

that that he hasn't done that.  In other words, there is no perfect system where we can know every single minute what he is doing.

With respect to -- by no means making light of the condition of Mr. Conte's daughter.  I don't understand if she was in New York and traveled to Florida, still it may be something that's physically uncomfortable for her to come back to New York, but clearly it means that she is capable of traveling.

I haven't heard anything to suggest what it is about her ailment that has changed since February, assuming that she even went in February, at that earliest date, from New York to Florida, why she can't return to the state now if it's so important for her to see her father before he's incarcerated.

There is also a matter of some fairness to the government.  When the government entered into an agreement with counsel that we would not seek the remand of the defendant at the time of his taking a guilty plea in June, it was with the understanding that all conditions could remain the same.  That is, that he would be under house arrest.

And we have tried to be fairly reasonable in terms of his requests to see his daughter -- I'm sorry -- his infant granddaughter, to go to the doctor.  But here this is something where there really is a change that we do feel would be substantial and it really changes what at least the bargain

9

1  that we thought we were reaching with counsel, which is that
2  he would be under house arrest in New York and that he could
3  not be seeing the 16 people who are listed and that -- on the
4  list of people he shouldn't contact, and now -- in fact that
5  had been previously litigated in this case and Mr. Conte had
6  withdrawn the request to see Mr. Mauro.
7       With respect to the christening which is -- this is
8  the first I hear of it.  If that's simply all this is about is
9  that he would need to go to a christening in a week or ten
10 days and that Mr. Mauro might be there, that's something I'm
11 sure we can discuss and we will be able to work it out.  If
12 that's the limited purpose, and that's the only occasion in
13 which Mr. Conte would be in the same room as Mr. Mauro, I
14 think we can work that out.  This is the first we've heard of
15 it.
16      But in terms of generally lifting the restriction,
17 we would be opposed to it for the same reasons we were opposed
18 to it at the outset.
19      MR. BRONSON:  Your Honor -- did I cut you off?
20      MR. WEISSMANN:  No.
21      MR. BRONSON:  His daughter, very briefly, in 1993
22 was living here in Westchester.  She subsequently moved to
23 Florida.  We made an application to this Court so he would be
24 permitted to visit with her in Florida, and Your Honor heard
25 from Mr. Conte about how he wanted to be able to take her in

10

1  the pool at his residence, he wanted to be able to spend
2  meaningful time with her.  That's what he did.
3      When we pleaded guilty, we made a deal with the
4  government to plead guilty in connection with this case back
5  in June, a couple of days before trial, the subject of
6  Mr. Conte's bail was discussed and the subject was discussed
7  in the following manner.
8      That he would -- he would remain under house arrest.
9  The subject of whether or not he would be permitted to make
10 another application to this Court as the Court had done on
11 previous occasions was never broached.  I tell you that as an
12 officer of the Court, Your Honor.  It never came up in the
13 discussions.
14     I never -- I wouldn't stand here in this Court and
15 tell you I agreed not to ask the Court for an application that
16 I made -- under an agreement with Mr. Gleeson which I had
17 previously said I wouldn't do.  I wouldn't do that.
18     Your Honor let him go to Florida when he was facing
19 charges.  He didn't violate the Court's orders.  He didn't run
20 away.
21     Certainly, Judge, if Mr. Conte had any idea about
22 leaving this jurisdiction, he wouldn't wait until the last
23 minute before the entry into the prison system to do it.
24     This is a good faith application, Judge.  I urge you
25 with compassion to grant Mr. Conte this limited request.

GR      OCR      CM      CRR      CSR

11

1        THE COURT:  Is there anything further?
2        MR. WEISSMANN:   No, Judge.
3        THE COURT:  Mr. Bronson, I have had many defendants
4   under house arrest over many, many years.  I have never
5   experienced the kind of avalanche, flood, of faxes and
6   applications that come in daily, with respect to your client.
7        I come to my office each morning expecting, fully
8   expecting, and never disappointed, to get another fax from the
9   office of Larry Bronson, asking for some modification of the
10  terms of house arrest, to the point, Mr. Bronson, where house
11  arrest or the phrase "house arrest" as applied to Mr. Conte
12  has become a myth, and I have the sense, Mr. Bronson, that
13  house arrest has become almost a mockery where Mr. Conte is
14  concerned.
15       MR. BRONSON:  Could I give you just one thought with
16  respect to that?
17       THE COURT:  Why don't you let me finish?  Then I'll
18  give you an opportunity to say something else.
19       MR. BRONSON:  I'm sorry.
20       THE COURT:  I have been sorely tempted now for some
21  weeks to request affidavits from these numerous people that
22  Mr. Conte goes to visit four or five times a week, regarding
23  the necessity of all of these visits and the propriety of all
24  these visits, which are really remarkable.
25       There isn't a week that goes by that I don't think I

1  get at least three or four faxes from you regarding
2  applications for modifications of house arrest.
3       If I were going to make a bail determination
4  regarding Mr. Conte, which was not intended to be house
5  arrest, I wouldn't have done it.  When I made a determination
6  not to remand Mr. Conte, which is what the statute
7  required -- and I could remind you that your plea agreement
8  with the government was simply that the government would not
9  oppose an application for house arrest.  It wasn't a
10 recommendation or part of the agreement that you entered into
11 with Mr. Gleeson or Mr. Weissmann, or whoever it was that you
12 negotiated this plea agreement with.  It was simply the
13 government saying, we won't oppose it.
14      In the exercise of my discretion, I granted it.
15 Intending at the point I granted it that house arrest would be
16 house arrest, that it would proceed from day-to-day, in
17 accordance with my understanding and everybody else's
18 understanding as to what house arrest is all about.  It was an
19 alternative to being detained at the MCC or Otisville or some
20 other place.
21      I permitted Mr. Conte to be home, under house
22 arrest, with some modifications regarding house arrest, which
23 I think are rather extraordinary, regarding some of the visits
24 which Mr. Conte has been permitted to make during the course
25 of his house arrest.

1                With respect to the other matters that you urge upon
2     me, Mr. Bronson, regarding Mr. Mauro and all the rest of it, I
3     just want to remind you, sir, that I presided over a trial.  I
4     presided over a trial in which I heard a lot of evidence.  I
5     presided over a trial in which I saw a lot of videos.  I
6     presided over a trial in which I listened to a lot of audios.
7     I presided over a trial in which lots of information was
8     presented in accordance with the Rules of Evidence in this
9     court which left me with very little doubt as to what
10    Mr. Conte's role in connection with the matters with which he
11    was charged was.
12               And I would say, Mr. Bronson, in response to your
13    applications, that I didn't bring Mr. Conte here.  I didn't
14    invite him here.  I didn't suggest to Mr. Conte or encourage
15    Mr. Conte to become a captain in the Gambino Organized Crime
16    Family.  That was a choice which he made.  I didn't suggest
17    that he do it.  I don't have any question in my mind but that
18    that's what Mr. Conte has been for a significant period of
19    time, captain of a crew in the Gambino Organized Crime Family.
20    I have very little doubt as to what Mr. Conte's role in that
21    capacity has been over all these years.
22               When Mr. Conte made the decision years ago to
23    affiliate himself with the Gambino Organized Crime Family, he
24    knew that he had a family.  He knew that he had a daughter.
25    He knew that he had family relationships.  He knew, or should

14

1  have known, that if the time ever arrived when Mr. Conte might
2  be asked to respond to his involvement in the Gambino Family,
3  that it might affect his family relationships, it might
4  deprive him of the opportunity which he otherwise might have
5  had, had he been living an otherwise perfectly law-abiding
6  life, to enjoy the company of his family, as persons who lead
7  perfectly law-abiding lives normally are permitted to do.
8           He knew all that, but he made an election, he made a
9  choice, to live a life which was not quite that.  He lived the
10 life that he did, and he pleaded guilty to a crime.
11          I think that the plea agreement which was entered
12 into by the government with Mr. Conte was charitable, to put
13 it mildly, and was fairly lenient, as far as Mr. Conte was
14 concerned.
15          I don't see any justification for granting either
16 application.
17          So far as the christening is concerned,
18 Mr. Bronson --
19          MR. BRONSON:  Judge, may I be heard for one moment?
20          THE COURT:  Yes, you could.
21          MR. BRONSON:  I have -- you know, I have listened to
22 you with great interest about Mr. Conte's role and so forth,
23 and he's going to be punished for that role, and you heard an
24 application on two other occasions.
25          THE COURT:  Right.

15

1   MR. BRONSON:  And I think you permitted him to make
2   those visits so that Mr. Conte could spend the time with his
3   daughter, full well knowing everything that you know today.
4   Having heard a trial, having heard all the evidence, you
5   permitted such an application.
6   THE COURT:  I did.
7   MR. BRONSON:  Okay.  And he is going to pay mightily
8   for his decision to do what Your Honor says he elected to do
9   many years ago.  It would seem, Your Honor, that that is a
10  sufficient price for him to pay.  That is, going to jail at
11  the very end of a long life.
12  I suggest to you, Your Honor, that not allowing the
13  daughter to visit with him near this very focal point --
14  THE COURT:  I didn't say the daughter is not
15  permitted to visit with Mr. Conte, Mr. Bronson.
16  MR. BRONSON:  Judge, may I finish my thought, Judge?
17  THE COURT:  Excuse me.  I just want to correct a
18  misstatement that you made, Mr. Bronson.  You said that I am
19  not permitting his daughter to visit with him.  I am doing no
20  such thing.
21  MR. BRONSON:  May I finish?
22  THE COURT:  I am prohibiting or declining your
23  request to permit Mr. Conte to go to Florida.  His daughter
24  can visit with her father if she can be brought up here.  I am
25  prohibiting him from going to Florida to see her.

16

1    I know all about what I did before.  I am fully
2 apprised and familiar with the applications I have granted
3 before, and I tell you, Mr. Bronson, that I have granted those
4 applications out of the considerations which you have
5 indicated, and I think I have been more than fair, more than
6 lenient, and more than considerate of your client with respect
7 to the terms of house arrest which I remanded him to or
8 directed him to or directed that he be placed in rather than
9 being placed in detention.  I have been more than fair, more
10 than considerate, more than lenient with Mr. Conte with
11 respect to the past, oh, any number of months that he has been
12 on house arrest.
13     I don't really think, Mr. Bronson, that you would
14 want me to respond to proportionality of whatever it is the
15 sentence is or whatever it is that Mr. Conte may be facing in
16 terms of that factor as compared to the 20, 30, or whatever
17 number of years of his life preceding that.  If you'd like me
18 to, I'd be happy to put some matters in balance for the
19 purpose of asking you to consider questions of
20 proportionality.  I don't think you want me to do that.
21     Anything else?
22     MR. BRONSON:  No, Your Honor.
23     THE COURT:  Thank you.
24     As far as Mr. Mauro and a christening is concerned,
25 you can work that out.    (Matter concludes.)